* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission adopts the Opinion and Award of Chief Deputy Commissioner Taylor with minor modifications. *Page 2 
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly named and joined, and there are no issues regarding insufficient or improper notice of this proceeding.
2. The employer/employee relationship existed between plaintiff and Colpa-Dolce at the time of the alleged accident.
3. Defendant Colpa-Dolce was plaintiff's employer at the time of the alleged incident.
4. Defendant Travelers Property Casualty Company of America was, at all relevant times, a provider of workers' compensation insurance coverage to Colpa-Dolce in at least some states.
5. The parties are subject to the North Carolina Workers' Compensation Act, with Colpa-Dolce employing the requisite number of employees to be bound under the provisions of said Act at the time of the alleged incident.
6. The injury which is the subject of this claim occurred on December 9, 2005.
7. The North Carolina Industrial Commission has jurisdiction to adjudicate the plaintiff's claim for benefits under the workers' compensation laws of North Carolina.
8. Plaintiff's claim was timely filed.
9. Proper notice was given to the employer.
10. Plaintiff's injury was an injury by accident arising out of and in the course of the employment. *Page 3 
11. Plaintiff satisfied all other jurisdictional prerequisites necessary to allow the Commission to hear this case on the merits.
12. Plaintiff last worked for defendant Colpa-Dolce on December 9, 2005, but may have received some compensation after that date for a limited period of time.
13. The following documents were received into evidence as:
 • Stipulated Exhibit 1: Pre-Trial Agreement;
 • Stipulated Exhibit 2: In excess of 1900 pages that include photographs, discovery responses, various insurance documents, medical records and medical expenses;
 • Stipulated Exhibit 3: Rule 30(b)(6) deposition of Tina Smith; and
 • Stipulated Exhibit 4: I.C. Forms.
14. The following are the issues presented by the parties before the deputy commissioner:
 Plaintiff asserts that the issues are:
 a. What benefits is plaintiff entitled to receive; and
 b. Which defendant or defendants are responsible for paying the benefits to which plaintiff is entitled.
 Defendants assert that the issues are:
 Travelers Issues
 a. Whether the policy issued by defendant Travelers to Colpa Dolce provided coverage for workers' compensation benefits claimed by plaintiff under North Carolina workers' compensation law. *Page 4 
 b. Whether plaintiff's work in North Carolina satisfied the requirements of the Limited Other States Insurance Endorsement contained in the policy issued by defendant Travelers.
 c. Whether Excel Tower Services, Inc., is plaintiff's statutory employer due to a failure to comply with N.C. Gen. Stat. § 97-19.
 d. Whether Excel Tower Services, Inc. is plaintiff's employer pursuant to the lent-employee doctrine.
 e. What benefits, if any, are due to plaintiff under the policy issued by defendant Travelers as a result of his injury of December 9, 2005?
 Excel's Issues
 a. At the time of plaintiff's injury, did defendant Travelers provide workers' compensation insurance to Colpa-Dolce, LLC d/b/a Communications Contractors?
 b. If so, at the time of plaintiff's injury, did the Travelers insurance policy validly exclude any injury occurring in North Carolina from the terms of its coverage of Colpa-Dolce, LLC d/b/a Communications Contractors?
 c. If so, is defendant Travelers estopped to deny coverage based upon the issuance of a Certificate of Insurance to Excel Tower Services, Inc. by its agent?
 d. If not, is defendant Travelers estopped to deny coverage based upon the acceptance of an insurance premium calculated upon the payroll wages of plaintiff for work performed in North Carolina? *Page 5 
 e. If defendant Travelers is not responsible for coverage, at the time of plaintiff's injury, was Colpa-Dolce, LLC d/b/a Communications Contractors an independent contractor as defined by Williams v. ARL, Inc., 133 N.C. App. 625, 516 S.E.2d 187 (1999)?
 f. If not, did the alleged statutory employer Excel Tower Services, Inc. comply with N.C. Gen. Stat. § 97-19 by obtaining a valid certificate of insurance representing that defendant-employer Colpa-Dolce, LLC d/b/a Communications Contractors had workers' compensation insurance?
 g. If not, what priority of liability is appropriate pursuant to N.C. Gen. Stat. § 97-19?
 h. What benefits, if any, is plaintiff due as a result of his injury of December 9, 2005?
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a 33 year old male, born November 29, 1974. Plaintiff has a GED. Plaintiff was not working at the time of the hearing before the deputy commissioner and has a work history in roofing with two years of experience working on cell phone towers.
2. On October 17, 2005, plaintiff contacted Nancy Koons (hereinafter Koons), owner of Colpa-Dolce d/b/a Communications Contractors, by telephone from Indiana to discuss employment issues. Koons received plaintiff's phone call in Kentucky. After plaintiff expressed *Page 6 
interest in working for Colpa-Dolce, Koons instructed him to "Get in the truck and go to Jake, and you'll have a job." Plaintiff met Jason Jake Stratton (hereinafter Stratton), the supervisor or crew leader on his crew, and traveled to a work site in South Carolina. Plaintiff accepted Koons' offer of employment in Indiana when he met Stratton. Therefore, plaintiff's contract of employment was formed in Indiana.
3. Plaintiff worked with other Colpa-Dolce employees for a short period of time in October in South Carolina performing installation and maintenance of cell phone equipment pursuant to a contract agreement with Excel Tower Services (hereinafter Excel). The period of time plaintiff worked in South Carolina is disputed. Plaintiff claims to have worked in South Carolina for a week and one-half, Colpa-Dolce claims plaintiff only worked two days in South Carolina, and plaintiff's timesheets from October 17, 2005 through October 23, 2005 indicate that plaintiff worked seven days in South Carolina. After completing the South Carolina work, Colpa-Dolce did not do any work for Excel for several weeks.
4. Compass has an overall contract with cellular telephone companies to maintain and upgrade their towers. Compass contracts with Excel and other similar businesses to perform these service contracts. Excel subcontracts some of the excess work to smaller companies such as Colpa-Dolce, plaintiff's employer.
5. On October 19, 2005, Koons of Colpa-Dolce contacted the May Agency in Bloomington, Indiana to discuss workers' compensation insurance. Koons completed an application for an assigned risk workers' compensation policy requesting coverage for the states of Illinois and South Carolina. The policy's proposed effective date was October 20, 2005. The May Agency submitted Koons' application to the National Council on Compensation Insurance (NCCI). *Page 7 
6. On October 20, 2005, the May Agency sent a Certificate of Insurance to Excel. The Certificate of Insurance indicated that insurance was provided by NCCI under a policy binder number 15814290. The block used on the Accord Form 25, the standard certificate of insurance, for exclusions/special operations was blank. The Certificate of Insurance also indicated that it was for information only and conferred no rights upon its holder. The Certificate of Insurance was not issued by a workers' compensation insurance carrier and did not state that the contractor had complied with N.C. Gen. Stat. § 97-93.
7. On October 22, 2005, NCCI sent a policy binder to Colpa-Dolce, the May Agency, and Travelers. The policy binder indicated that coverage for Colpa-Dolce was requested for the states of Illinois and South Carolina.
8. On October 24, 2005, the May Agency sent a second Certificate of Insurance to Excel, in the same form as the first, after Koons informed the May Agency that Excel had not received the Certificate of Insurance sent on October 20, 2005.
9. On November 11, 2005, Travelers issued policy number 6JUB-1015C00-9-05 ("the policy") to Colpa-Dolce. The policy only provided coverage for benefits sought under the workers' compensation laws of Illinois and South Carolina, the states listed in Item 3.A of the policy's information page. The policy contained a Residual Markets Limited Other States Endorsement which provided that Travelers would pay benefits under the laws of states other than Illinois and South Carolina if all of the following conditions were met:
 a. The employee claiming benefits was either hired under a contract of employment made in a state listed in Item 3.A of the Information Page or was, at the time of injury, principally employed in a state listed in Item 3.A of the Information Page; *Page 8 
 b. The employee claiming benefits is not claiming benefits in a state where, at the time of injury, (i) you have other workers' compensation insurance coverage, or (ii) you were, by virtue of the nature of your operations in that state, required by that state's law to have obtained separate workers' compensation insurance coverage, or (iii) you are an authorized self-insurer or participant in a self-insured group plan; and
 c. The duration of the work being performed by the employee claiming benefits in the state for which that employee is claiming benefits is temporary.
10. On November 11, 2005, David Terry (hereinafter Terry), a Project Manager for Excel, contacted Koons about the availability of additional work. Terry indicated that he did not have any more work for her with Verizon, but would have additional work for Cingular. Terry asked Koons to submit a bid for the projects and indicated he would like to begin work on the following Monday or Tuesday. Terry also indicated that Excel would provide all the relevant parts and included documentation which specified how contractors working on Cingular projects were required to operate. The documentation provided to Koons by Terry provided strict guidelines for contractors working on Cingular's towers.
11. After several electronic mail messages, Colpa-Dolce agreed to complete the work on Cingular's towers for $5,500.00. Koons indicated she would have her crew arrive on the evening of Tuesday, November 15, 2005. Colpa-Dolce's records indicate that three of its employees, not including plaintiff, were paid for work with Excel on November 20, 2005 and November 27, 2005. Excel did not obtain a new certificate of insurance from Colpa-Dolce after reaching the agreement regarding the Cingular projects. *Page 9 
12. On November 30, 2005, Excel assigned additional projects in North Carolina to Colpa-Dolce. Excel's records demonstrate that the parties agreed to different rates for different projects. Excel did not obtain a new certificate of insurance from Colpa-Dolce before the November 30, 2005 assignment of projects to Colpa-Dolce.
13. On November 30, 2005, plaintiff and four other Colpa-Dolce employees departed for Excel's office in North Carolina. Plaintiff expected to work in North Carolina for several weeks. Plaintiff earned more of his wages and worked for more days from work with Colpa-Dolce in North Carolina than from work in any other state.
14. On December 9, 2005, plaintiff and his crew arrived at a job site in Chapel Hill, North Carolina. This job required installing equipment at the top of a water tower. Plaintiff worked for Colpa-Dolce for less than 52 weeks. Therefore, his average weekly wage is to be calculated using the method of dividing the earnings during that period by the number of weeks and parts thereof during which he earned wages, provided, results are fair and just to both parties. During the five weeks plaintiff worked for Colpa-Dolce, he earned $2,823.50 in wages and a one-time bonus of $100.00. Plaintiff's average weekly wage is $564.70, which yields a weekly compensation rate of $376.48. This method of calculating plaintiff's average weekly wage does not yield unfair results.
15. Upon his arrival at the site in Chapel Hill, plaintiff discovered that the ladder which led to the top of the tower was still secured by a gate which prevented unauthorized individuals from accessing the bottom rungs of the ladder. Plaintiff was instructed by his supervisor to climb above the protective gate and reach the unsecured rungs of the ladder by climbing on the metal pieces that secured the ladder to the tower. Plaintiff pulled the truck below the ladder, climbed on top of the truck, climbed up the side of the ladder until he reached *Page 10 
the rungs, and then climbed to the top of the water tower. After reaching the top of the tower, plaintiff completed his work without incident. Plaintiff descended the tower and once again reached the protective gate. As plaintiff attempted to descend by using the side of the ladder, he slipped and fell to the ground.
16. Plaintiff suffered a displaced complex fracture of the distal tibia and fibula and an interarticular fracture with soft tissue damage to his right leg which was broken in nine places. Plaintiff was never given a safety manual to review or instructed on climbing. Plaintiff was merely shown how to work the clip-on harness. Plaintiff did not at any time willfully fail to use a safety appliance or perform a statutory duty.
17. Following the incident, plaintiff was taken to the University of North Carolina Hospitals (UNC Hospitals) for surgery. Two days after the accident, plaintiff left UNC Hospitals and traveled to Pennsylvania. Plaintiff received additional medical treatment for his right leg injury at the Hershey Medical Center in Hershey, Pennsylvania.
18. Plaintiff has undergone five serious surgeries for the injury to his leg since leaving UNC Hospital including external fixation, debridements, open reduction internal fixation, and plating and flap closure of complex fractures of his distal right tibia and fibula. Plaintiff remains in considerable pain, continues to take substantial pain medication, and continues to need further medical treatment.
19. On December 12, 2005, three days after plaintiff's injury, Koons contacted the May Agency and requested that North Carolina be added to the Colpa-Dolce policy with an estimated payroll of $15,000 and an effective date of December 5, 2005, seven days prior to the call and four days prior to plaintiff's accident. The representative of the May Agency indicated that she would make the request, but did not believe coverage could be back-dated. *Page 11 
20. On December 13, 2005, coverage for North Carolina was added to Colpa-Dolce's policy. After North Carolina was added to the policy, Travelers billed Colpa-Dolce for the additional insurance.
21. Plaintiff did not work from December 9, 2005 until January 2007. In January 2007, plaintiff attempted to return to work as a cashier at a Circle K convenience store in Bloomington, Indiana. Plaintiff worked the night shift and earned $6.50 per hour. Plaintiff held this position until March 2007. Plaintiff ultimately had to quit this job due to pain and the necessity of taking pain medication. Plaintiff was not able to perform the standing, lifting, and ladder-climbing required by the job. Plaintiff has not worked since March 2007.
22. Plaintiff has not applied for other jobs since his compensable injury.
23. In 2007, Travelers contracted with an outside provider to conduct a premium audit for the policy issued to Colpa-Dolce. The final audit was necessary in order to determine if Colpa-Dolce paid the appropriate amount of premium for their payroll. Due to a miscommunication with the outside provider, the audit gathered payroll for work done in North Carolina prior to December 13, 2005. As a result of the audit, Travelers issued a premium bill which charged a premium based upon the North Carolina payroll dating back to the policy's inception. Colpa-Dolce never attempted to pay this premium bill, and Travelers never accepted the premium based upon its discovery that the audit was incorrect and the bill was a mistake.
24. In January 2008, plaintiff was evaluated by Dr. Edwin B. Cooper for an independent medical evaluation. Dr. Cooper is a retired orthopedic surgeon located in Kinston, North Carolina. Dr. Cooper produced a report regarding his evaluation of plaintiff's medical records as well as plaintiff's current physical condition. Dr. Cooper was of the opinion that plaintiff continued to have a nonunion of the distal right tibial fracture, partially healed, *Page 12 
osteomyelitis of the distal right tibia, probably not active, post-traumatic arthritis of the right ankle, and post-traumatic arthritis of the right knee. Dr. Cooper was of the opinion that due to the osteoporosis in plaintiff's right lower leg, he has a definite risk of re-fracturing the right lower extremity with a minor trauma such as twisting the leg and falling. Thus plaintiff should never return to work that required working on ladders or at heights.
25. Dr. Cooper opined that plaintiff is permanently and totally disabled to ever return to his previous work on cell phone towers or similar occupations involving climbing and heavy lifting. Dr. Cooper also opined that pending further evaluation plaintiff remains totally disabled to do any type of employment at this time and that plaintiff has been totally disabled to work at any job from the time of his injury up until the date of the report.
26. According to Dr. Cooper plaintiff needs an MRI to look for internal derangement of the right knee as a result of plaintiff's fall and to assess plaintiff's level of post-traumatic arthritis. Dr. Cooper opined that plaintiff will need orthopaedic surgery follow-up to monitor and treat his nonunion of the right tibia and potential reinfection in the right distal tibia and that plaintiff may need treatment for his right knee and ankle. Plaintiff has not yet reached maximum medical improvement.
27. On April 16, 2008, plaintiff was examined at the request of defendants by Dr. David Boone. Dr. Boone is a practicing orthopedic surgeon in Raleigh, North Carolina. Dr. Boone reviewed plaintiff's medical records and conducted a physical examination. Dr. Boone suspected a nonunion from plaintiff's x-rays. However, due to the fact that plaintiff has pain when he walks, but not with each and every step, Dr. Boone thought a nonunion was less likely. Dr. Boone was of the opinion that plaintiff's ability to work would be determined with trial and error and that with plaintiff's severe injury, there is a significant chance that he would have a *Page 13 
hard time working for many years in this capacity and would have a hard time working consecutive hours during the day on his feet. Dr. Boone recommended that plaintiff receive vocational training.
28. Plaintiff needs medical treatment as recommended by Dr. Cooper and bears a substantial risk of the necessity of future medical treatment for his compensable right leg injuries.
29. Plaintiff has not received any medical treatment or workers' compensation benefits from any of the defendants in this action.
30. Plaintiff is permanently disabled from his former employments of roofing and climbing cell phone towers.
31. Plaintiff made an unsuccessful trial return to work with Circle K from January to March 2007.
32. Defendant Colpa-Dolce defended this action without reasonable ground pursuant to N.C. Gen. Stat. § 97-88.1.
33. The defendants in this matter, other than Colpa-Dolce, did not defend this action without reasonable ground.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On December 9, 2005, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant Colpa-Dolce resulting in substantial injury to his right leg. N.C. Gen. Stat. § 97-2(6). *Page 14 
2. The greater weight of the credible evidence proves that plaintiff was an employee of Colpa-Dolce at the time of plaintiff's injury with his principal place of employment in North Carolina. N.C. Gen. Stat. §§ 97-2(2); 97-19.1. Perkins v. Arkansas Trucking Servs., Inc.,351 N.C. 634, 528 S.E.2d 902 (2000).
3. Plaintiff worked for Colpa-Dolce for less than 52 weeks, therefore, his average weekly wage is to be calculated using the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages, provided that the results are fair and just to both parties. N.C. Gen. Stat. § 97-2(5). During the five weeks plaintiff worked for Colpa-Dolce, he earned $2,823.50 in wages and a one-time bonus of $100.00. Plaintiff's average weekly wage is $564.70, which yields a compensation rate of $376.48. This method of calculating plaintiff's average weekly wage does not yield unfair results. Id.
4. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek *Page 15 
employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, supra.
5. Based upon the greater weight of the medical evidence, the fact that plaintiff is permanently incapable of performing his former employments of roofing and climbing cell phone towers, and plaintiff's unsuccessful trial return to work, plaintiff has been temporarily totally disabled due to his December 9, 2005 injury and is entitled to temporary total disability compensation at the rate of $376.48 per week beginning on December 9, 2005 through December 31, 2006 and from April 1, 2007, and continuing. N.C. Gen. Stat. § 97-29.
6. As a result of his injury on December 9, 2005, plaintiff is entitled to temporary partial disability from January 2007 through March 2007 when he was employed in an unsuccessful trial return to work with Circle K. N.C. Gen. Stat. § 97-30.
7. As plaintiff is not seeking benefits under the workers' compensation laws of the States of Illinois or South Carolina, plaintiff's contract for employment with Colpa-Dolce was formed in Indiana, and plaintiff's principal place of employment at the time of his injury was in North Carolina, the requirements of the Travelers policy's Limited Other States Insurance Endorsement have not been met. Therefore, defendant Colpa-Dolce was not covered by the Travelers workers' compensation insurance policy for plaintiff's injury in North Carolina on December 9, 2005 for which plaintiff seeks benefits.
8. At the time of plaintiff's injury, Colpa-Dolce was an employer subject to the North Carolina Workers' Compensation Act and was required to either obtain workers' compensation insurance for the State of North Carolina or be certified as a self-insured employer. N.C. Gen. Stat. § 97-93. At the time of plaintiff's injury, Colpa-Dolce did not have *Page 16 
workers' compensation insurance which would provide benefits sought under the workers' compensation law of North Carolina.
9. Under N.C. Gen. Stat. § 97-19, "[a]ny principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by a workers' compensation insurance carrier, or a certificate of compliance issued by the Department of Insurance to a self-insured subcontractor, stating that such subcontractor has complied with N.C. Gen. Stat. § 97-93 hereof, shall be liable, irrespective of whether such subcontractor has regularly in service fewer than three employees in the same business within this State, to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract."
10. Excel sublet work in South Carolina to Colpa-Dolce prior to October 20, 2005, the date Colpa-Dolce requested that the May Agency send a certificate of insurance to Excel. Excel failed to obtain a new certificate of insurance prior to subletting work in North Carolina to Colpa-Dolce in late November 2005. Under N.C. Gen. Stat. § 97-19, because (1) plaintiff was working for a subcontractor, Colpa-Dolce, doing work which had been contracted to it by a principal contractor, Excel, and (2) the subcontractor does not have workers' compensation insurance covering the injured employee, Excel is plaintiff's statutory employer and is liable for the payment of compensation and other benefits to plaintiff. N.C. Gen. Stat. § 97-19; Robertson v. HagwoodHomes, 160 N.C. App. 137, 584 S.E.2d 871 (2003). *Page 17 
11. The manifest purpose of N.C. Gen. Stat. § 97-19 is to bring specific categories of persons within the coverage of the Act for the purpose of protecting them from "financially irresponsible subcontractors who do not carry workmen's compensation insurance, and to prevent principal contractors, intermediate contractors, and subcontractors from relieving themselves of liability under the Act by doing through subcontractors what they would otherwise do through the agency of direct employees." Withers v. Black, 230 N.C. 428,53 S.E.2d 668 (1949); Green v. Spivey, 236 N.C. 435, 73 S.E.2d 488 (1952).
12. N.C. Gen. Stat. § 97-19 provides that the Commission must "fix the order in which said parties shall be exhausted, beginning with the immediate employer." The order of exhaustion in this case pursuant to N.C. Gen. Stat. § 97-19 shall be Colpa-Dolce, the employer; followed by Excel and its carrier, American Interstate Insurance. If Colpa-Dolce does not pay this Award within the time permitted by the Act, plaintiff is entitled to enforce the award against Excel and its insurer immediately.
13. Defendant Travelers is not estopped from denying coverage for plaintiff's injury. Godly v. County of Pitt, 306 N.C. 357,293 S.E.2d 167 (1982).
14. Plaintiff is entitled to have defendants Colpa-Dolce, Excel, and American Interstate Insurance provide all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. This includes additional medical treatment recommended by Dr. Cooper. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1. *Page 18 
15. As defendant Colpa-Dolce defended this action without reasonable ground, plaintiff's attorney is entitled to a reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1, not to be deducted from plaintiff's compensation.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants Colpa-Dolce, Excel and American Interstate Insurance shall pay plaintiff temporary total disability compensation at the rate of $376.48 per week beginning on December 9, 2005 through December 31, 2006 and from April 1, 2007 and continuing. Portions of this amount have accrued and shall be paid in a lump sum. All amounts in this paragraph shall be paid pursuant to the attorney's fee contained in Paragraphs 4 and 9.
2. Defendants Colpa-Dolce, Excel and American Interstate Insurance shall pay plaintiff temporary partial disability from January 2007 through March 2007 when plaintiff was employed in an unsuccessful trial return to work with Circle K. This amount has accrued and shall be paid in a lump sum subject to an attorney's fee contained in Paragraphs 4 and 9.
3. Defendants Colpa-Dolce, Excel and American Interstate Insurance shall pay all past and future medical expenses incurred for treatment of plaintiff's December 9, 2005 injury, including future evaluations and treatment by a physician selected by plaintiff near his home.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff in Paragraphs 1 and 2 is approved for plaintiff's counsel and shall be paid as follows: 25% of the sums due plaintiff in Paragraphs 1 and 2 shall be paid directly to plaintiff's counsel by Colpa-Dolce *Page 19 
as an attorney's fee. This attorney's fee shall not be deducted from the sums due to plaintiff in Paragraphs 1 and 2.
5. An expert witness fee in the amount of $750.00 is hereby approved for Dr. David Boone which shall be paid by defendants Excel and American Interstate Insurance.
6. Defendants shall pay the costs, including plaintiff's costs.
7. Pursuant to N.C. Gen. Stat. § 97-19, the order of exhaustion in this case shall be Colpa-Dolce, the employer, followed by Excel and its carrier, American Interstate Insurance. If Colpa-Dolce does not pay this Award within the time permitted by the Act, plaintiff is entitled to enforce the award against Excel and its insurer immediately.
8. Colpa-Dolce shall be deemed exhausted within the meaning of N.C. Gen. Stat. § 97-19 if it does not pay the Award herein, in full, within the time permitted by N.C. Gen. Stat. § 97-18(e) (40 days).
9. If Colpa-Dolce does not satisfy this Award within the time permitted by N.C. Gen. Stat. § 97-18(e) (within 40 days from the date of this Opinion and Award), plaintiff will have exhausted Colpa-Dolce within the meaning of N.C. Gen. Stat. § 97-19 and he will be entitled to immediate payment of the entire Award from Excel and American Interstate Insurance. Except, in the event payment is made by Excel and American Interstate Insurance, an attorney's fee of 25% shall be deducted by Excel and American Interstate Insurance from the sums due plaintiff and paid directly to plaintiff's counsel.
This the 2nd day of June 2009.
 S/___________________ STACI T. MEYER COMMISSIONER *Page 20 
CONCURRING:
S/___________________ PAMELA T. YOUNG CHAIR
S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1